UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
                 :
GUO WENGUI, BEIJING PANGU     :
INVESTMENT CO., LTD., and BEIJING   :
ZENITH HOLDINGS CO. LTD.,     :  Case No: 18-cv-00845-RA-KNF
                 :
       Plaintiffs,    :
                 :
     v.           :
                 :
ZHENG WU A/K/A BRUNO WU,    :
                 :
       Defendant.   :
-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

ARKIN SOLBAKKEN LLP
Lisa C. Solbakken, Esq.
Robert C. Angelillo, Esq.
Thomas G. O'Brien, Esq.
750 Lexington Avenue, 25th Fl.
New York, NY  10022
Tel: (212) 333-0200
Fax: (212) 333-2350
Email: lsolbakken@arkin-law.com
   rangelillo@arkin-law.com
   tobrien@arkin-law.com

*Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. (ii)

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 2

      A.    Plaintiffs are Foreign Citizens and Mr. Wu
           is a United States Citizen Domiciled in China.................................................... 2

      B.    Mr. Wu's Purported Wrongdoing ....................................................................... 3

ARGUMENT ..................................................................................................................... 4

I.      DIVERSITY JURISDICTION DOES NOT EXIST HERE. ....................................... 5

II.     PLAINTIFFS' CLAIMS ARE BARRED BY THE ACT OF STATE DOCTRINE.......... 9

III.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO
       STATE A CLAIM ....................................................................................... 11

      A.    Plaintiffs Do Not and Cannot Plead a Conspiracy Between
           Mr. Wu and the Unidentified Chinese Officials They Name. .............................. 11

      B.    Plaintiffs Do Not and Cannot Sufficiently Plead
           the Elements of Their Underlying Tort Claims .................................................... 13

             1.    Company Plaintiffs' Do Not and Cannot  Sufficiently Allege
                  the Elements of Their Direct  Claim for Tortious Interference
                  with Business Relations ........................................................................... 13

             2.    Aiding and Abetting Claims Against Mr. Wu Should be Dismissed ....... 15

             3.    Company Plaintiffs' Aiding and Abetting Conversion Claim Should
                  be Dismissed For the Separate and Independent Reason that they
                  Cannot Allege that the Chinese Government Converted their Property... 17

             4.    Company Plaintiffs' Aiding and Abetting Trespass Claim
                  Should Be Dismissed Because Plaintiffs Fail to Allege that
                  the Chinese Authorities Were Not Authorized to Seize Their Assets ...... 18

             5.    Guo Fails to Allege Intentional Infliction of Emotional Distress............. 18

             6.    Company Plaintiffs Do Not and Cannot Sufficiently Allege
                  the Elements of a *Prima Facie* Tort Claim ............................................... 20

IV.    THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS BECAUSE
       THEY ARE BARRED BY STATUTES OF LIMITATION. ........................................ 21

# TABLE OF AUTHORITIES

## Cases

*9310 Third Ave. Assocs. v. Schaffer Food Serv. Co.*,
  210 A.D.2d 207 (N.Y. App. Div. 2d Dep't 1994)..................................................... 17

*Amity v. Woodbridge Assocs., L.P.*, No. 12-cv-652,
  2013 U.S. Dist. LEXIS 164985 (D. Conn. Nov. 20, 2013)........................................ 8

*A&P v. Town of E. Hampton*,
  997 F. Supp. 340 (E.D.N.Y. 1998)........................................................................... 13

*APWU v. Potter*,
  343 F.3d 619 (2d Cir. 2003)............................................................................... 4, 5

*Banco Nacional De Cuba v. Sabbatino*,
  376 U.S. 398 (1964) ................................................................................................. 9

*Bokkelen v. Grumman Aerospace Corp.*,
  432 F. Supp. 329 (E.D.N.Y. 1977).......................................................................... 10

*Bowen v. Yellow Freight Sys.*, No. 95-9235,
  1996 U.S. App. LEXIS 11858 (2d Cir. May 23, 1996) ............................................ 7

*Brignoli v. Balch, Hardy & Scheinman, Inc.*,
  696 F. Supp. 37 (S.D.N.Y. 1988) ............................................................................. 6

*Broadstone Realty Corp. v. Evans*,
  213 F. Supp. 261 (S.D.N.Y. 1962)........................................................................ 6, 8

*Carvel Corp. v. Noonan*,
  3 N.Y.3d 182 (2004) .............................................................................................. 14

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
  547 F.3d 115 (2d Cir. 2008).................................................................................... 13

*Caixin Media Co. Ltd. v. Guo Wengui*,
  Index No. 652154/2017 (N.Y. Sup. Ct. N.Y. Cnty.).................................................. 1

*Chen v. EMSL Analytical, Inc.*,
  966 F. Supp. 2d 282 (S.D.N.Y. 2013) ...................................................................... 5

*Chung v. Sano*, No. 10-cv-2301,
  2011 U.S. Dist. LEXIS 34989 (E.D.N.Y. Mar. 31, 2011) ...................................... 17

*Cresswell v. Sullivan & Cromwell*,
  922 F.2d 60 (2d Cir. 1990)................................................................................... 5, 6

*Dickinson v. Igoni*,
   76 A.D.3d 943 (N.Y. App. Div. 2d Dep't 2010) ................................................................ 17

*Doron Precision Sys. v. FAAC, Inc.*,
   423 F. Supp. 2d 173 (S.D.N.Y. 2006) ............................................................................... 19

*East Coast Novelty Co. v. City of New York*,
   809 F. Supp. 285 (S.D.N.Y. 1992) ................................................................................... 18

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*,
   809 F.3d 737 (2d Cir. 2016) ............................................................................................... 9

*Fuerst v. Fuerst*,
   832 F. Supp. 2d 210 (E.D.N.Y. 2011) ........................................................................ 5, 6, 8

*G.K.A. Beverage Corp. v. Honickman*,
   55 F.3d 762 (2d Cir. 1995) ............................................................................................... 14

*Goodman v. Port Auth. of N.Y. & N.J.*,
   850 F. Supp. 2d 363 (S.D.N.Y. 2012) ......................................................................... 18, 19

*Graham v. Select Portfolio Serv., Inc.*,
   156 F. Supp. 3d 491 (S.D.N.Y. 2016) ............................................................................. 4, 5

*Grove Press, Inc. v. Angleton*,
   649 F.2d 121 (2d Cir. 1981) ......................................................................................... 15, 16

*Herrington v. Verrilli*,
   151 F. Supp. 2d 449 (S.D.N.Y. 2001) ............................................................................... 21

*Hidden Brook Air, Inc. v. Thabet Aviation Int'l, Inc.*,
   241 F. Supp. 2d 246 (S.D.N.Y. 2002) ............................................................................... 11

*Huff v. West Haven Bd. Of Educ.*,
   10 F. Supp. 2d 117 (D. Conn. 1998) ................................................................................. 20

*Hunt v. Mobil Oil Corp.*,
   550 F.2d 68 (2d Cir. 1977) ............................................................................................. 9, 10

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
   12 N.Y.3d 132 (2009) ....................................................................................................... 22

*Integrated Tech. & Dev., Inc. v. Rosenfield*,
   103 F. Supp. 2d 574 (E.D.N.Y. 2000) ................................................................................. 5

*Kelber v. Forest Elec. Corp.*,
   799 F. Supp. 326 (S.D.N.Y. 1992) .................................................................................... 21

(iii)

*Kirschner v. Bennett*,
   648 F. Supp. 2d 525 (S.D.N.Y. 2009) ........................................................... 15, 16

*Konowaloff v. Metro. Museum of Art*,
   702 F.3d 140 (2d Cir. 2012) ..................................................................... 9, 10

*Lemos v. Pateras*,
   5 F. Supp. 2d 164 (S.D.N.Y. 1998) ............................................................... 5, 6

*Lewis v. Rosenfeld*,
   138 F. Supp. 2d 466 (S.D.N.Y. 2001) ............................................................. 11

*Lyndonville Sav. Bank & Trust Co. v. Lussier*,
   211 F.3d 697 (2d Cir. 2000) ......................................................................... 5

*Mackason v. Diamond Fin. LLC*,
   347 F. Supp. 2d 53 (S.D.N.Y. 2004) ............................................................... 7

*Magee v. Paul Revere Life Ins. Co.*,
   954 F. Supp. 582 (E.D.N.Y. 1997) ................................................................ 20

*Marino v. Grupo Mundial Tenedora, S.A.*,
   810 F. Supp. 2d 601 (S.D.N.Y. 2011) ............................................................. 11

*Misek-Falkoff v. Int'l Bus. Machines Corp.*,
   162 A.D.2d 211 (N.Y. App. Div. 1st Dep't 1990) ............................................... 21

*Morrison v. Eminence Capital, LLC*,
   238 F. Supp. 3d 542 (S.D.N.Y. 2017) .............................................................. 5

*New York Tel. Co. v. Mobil Oil Corp.*,
   99 A.D.2d 185 (N.Y. App. Div. 1st Dep't 1984) ................................................ 21

*Owen v. Leventritt*,
   174 A.D.2d 471 (N.Y. App. Div. 1st Dep't 1991) ............................................... 19

*Palazzo v. Corio*,
   232 F.3d 38 (2d Cir. 2000) .......................................................................... 6

*Plasticware v. Flint Hills Res.*,
   852 F. Supp. 2d 398 (S.D.N.Y. 2012) .......................................................... 13, 14

*Restis v. Am. Coalition Against Nuclear Iran, Inc.*,
   53 F. Supp. 3d 705 (S.D.N.Y. 2014) .............................................................. 20

*Roper v. Hynes*, No. 05-cv-7664,
   2006 U.S. Dist. LEXIS 69128 (S.D.N.Y. Sept. 27, 2006) ..................................... 21

*Rother v. NYS Dep't of Corr. & Cmty. Supervision*,
   970 F. Supp. 2d 78 (N.D.N.Y. 2013) ...................................................................... 19

*Spiteri v. Russo*, No. 12-cv-2780,
   2013 U.S. Dist. LEXIS 128379 (E.D.N.Y. Sept. 7, 2013)................................... 5, 6. 8

*Toomer v. Cellco P'ship*, No. 11-cv-7515,
   2012 U.S. Dist. LEXIS 1012657 (S.D.N.Y. July 20, 2012)....................................... 13

*Twin Labs., Inc. v. Weider Health & Fitness*,
   900 F.2d 566 (2d Cir. 1990)....................................................................................... 20

*Yan Huang v. Wengui Guo*,
   Index No. 156552/2017 (N.Y. Sup. Ct. N.Y. Cnty.) .................................................. 1

## **Other Authorities**

28 U.S.C. § 1332(a) ........................................................................................................ 5

28 U.S.C. § 1746 ............................................................................................................. 2

Fed. R. Civ. P. 12(b)(1)............................................................................................ 1, 2, 4

Fed. R. Civ. P. 12(b)(6)................................................................................................ 1, 4

N.Y. C.P.L.R. § 215(3) ................................................................................................. 21

N.Y. C.P.L.R. § 214(4) ................................................................................................. 21

Defendant Zheng Wu a/k/a Bruno Wu ("Mr. Wu") respectfully submits this memorandum of law in support of his motion to dismiss the Complaint (Dkt. 1; "Compl." or "Complaint") pursuant to Federal Rules of Civil Procedure ("Rule(s)") 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

To support his effort to invoke this Court's jurisdiction, Plaintiff Guo Wengui ("Guo") spins a tale of alleged political dissidence, painting himself as a victim of life-long efforts to expose corruption in the People's Republic of China ("China").  In reality, however, Guo is nothing more than a con man—albeit a successful one—whose residence in New York City is derivative of his efforts to flee prosecution for a broad array of financial and other crimes.[1]  To this end, Guo purchased a penthouse apartment in the prestigious Sherry Netherland on Fifth Avenue, which acts as the base of operations for a propaganda campaign designed to deflect from Guo's wrongdoing and to drum up support for Guo's effort to obtain political asylum of the nature that only a billionaire could afford. This has resulted in no less than three cases pending against Guo in New York State court, the majority of which seek recompense for the wanton and malicious defamation Guo undertakes without any care whatsoever as he seeks to fortify his fan base with salacious stories targeting business people, entertainers, and political figures here and abroad.[2]

In all events, the instant Complaint, brought by Guo and two Beijing-based companies with which he is affiliated, should be dismissed.  The claims target an American citizen who is domiciled in China, in connection with alleged actions undertaken by a foreign sovereign on foreign soil which purportedly harmed foreign companies.  Even assuming Plaintiffs' claims

---

[1]   Guo is the subject of arrest warrants issued in China which raise criminal charges such as bribery, kidnaping, extortion, assault, fraud, money laundering, and falsifying documents. In addition to this, over 100 civil lawsuits have been filed against Guo in China, each seeking civil recompense for his conduct.

[2]   *See, e.g.*, *Caixin Media Co. Ltd. v. Guo Wengui*, Index No. 652154/2017 (N.Y. Sup. Ct. N.Y. Cnty.); *Yan Huang v. Wengui Guo*, Index No. 156552/2017 (N.Y. Sup. Ct. N.Y. Cnty.).

were not barred by the act of state doctrine (and they are), no subject matter jurisdiction may lie on these facts.  And even further assuming New York law was to apply here, Plaintiffs fail to state a cause of action and are pursuing claims that are time barred.

For each one of these reasons, as set forth more fully below, Mr. Wu respectfully requests that Plaintiffs' case be dismissed.

## STATEMENT OF FACTS

Mr. Wu disputes the allegations of wrongdoing in the Complaint, all of which are false and/or irrelevant.  That said, in connection with this motion to dismiss, any allegations that are well-plead by Plaintiffs are accepted as true solely for purposes of this motion.

### A.      Plaintiffs are Foreign Citizens and Mr. Wu is a United States Citizen Domiciled in China

The Complaint alleges that "Plaintiff Guo is a Hong Kong citizen who presently resides in New York."  Compl. ¶ 1.  Guo purports to control Plaintiffs Beijing Pangu Investment Co., Ltd. and Beijing Zenith Holdings Co. Ltd. (collectively, the "Company Plaintiffs"), each of which is alleged to be a Chinese entity with a principal place of business in Beijing, China. Compl. ¶¶ 2-3, 15-17.  The Complaint nowhere alleges the locale of Defendant Wu's purported domicile.  Instead, Plaintiffs claim, "[o]n information and belief," that Mr. Wu "is a United States citizen, who resides in New City, New York." Compl. ¶ 4.

In response to these allegations and pursuant to Rule 12(b)(1), Mr. Wu's declaration explains that he was born in China and lived continuously in China from birth—leaving only on temporary bases to attend school, for work purposes, and/or vacation purposes.  Declaration of Defendant Bruno Wu Pursuant to 28 U.S.C. § 1746 in Support of Defendant's Motion to Dismiss ("Wu Decl.") ¶ 3.

Mr. Wu is married to Yang Lan, who is a Chinese citizen born in China, and who is a well-respected media personality both in China and abroad. Wu Decl. ¶ 4. Mr. Wu and Ms. Yang permanently live in a home that Ms. Yang purchased in Beijing, China, and have lived there continuously since 2012. Wu Decl. ¶¶ 5-8. Ms. Yang also owns an apartment in New York City and a home in New City, New York, both of which Mr. Wu may use on occasion. Wu Decl. ¶¶ 18-19.

Mr. Wu is an entrepreneur, who has continuously served in top corporate positions at some of the largest private entertainment, media, and investment companies in Asia since 1999. Wu Decl. ¶¶ 11-17. This includes his current position at Sun Seven Stars Media Group Limited ("Seven Stars"), for which he serves as Co-Chairman and Chief Executive Officer at their primary offices—which are located in Beijing, China. Wu Decl. ¶¶ 14-15.

### B. Mr. Wu's Purported Wrongdoing

The Complaint alleges that Mr. Wu "conspired" with certain unidentified "high-ranking [Chinese] officials" referred to only as "OFFICIAL A" and "OFFICIAL B." *See* Compl. ¶¶ 33, 50. According to the Complaint, the objective of this conspiracy was to "coerce" Guo into silencing all who "attempted to disclose the corrupt activities of [these] conspirators." Compl. ¶¶ 33-34, 41-42, 45-50, 56. The Complaint fails to set forth any specific information showing the type of legal or other association that purportedly existed between Mr. Wu and the named (but unidentified) Chinese officials to further this conspiracy. *See generally* Compl. Nor does the Complaint explain the nature or scope of the "corrupt agreement" that purportedly exists among these individuals, whether Mr. Wu knew of the alleged Chinese officials' purportedly sinister plans, or why Mr. Wu even came to allegedly know of and work with "OFFICIAL A" or "OFFICIAL B." *See generally* Compl.

3

To the contrary, the sole allegations of any specific nature that may be said to relate to Mr. Wu suggest that in December 2014: (i) Guo was told by someone that Mr. Wu could help him (Compl. ¶ 36); (ii) Mr. Wu sent Guo an article posted on media site Boxun (Compl. ¶ 40); (iii) Mr. Wu offered to help Guo have adverse articles removed by Boxun (Compl. ¶ 40); and (iv) Guo refused this offer (Compl. ¶ 40).  The Complaint further claims Mr. Wu "demanded that [Guo] provide assistance to [Mr. Wu]," which included "locating an individual in the United States," Compl. ¶¶ 41-42, and that Mr. Wu suggested that the safety of Guo's family would be in peril if Guo did not cooperate.  Compl. ¶ 46.  The Complaint then alleges that Guo's family members and colleagues were eventually arrested, presumably by Chinese authorities. Compl. ¶ 47.  Mr. Wu is further alleged to have threatened Guo and his son with arrests (that apparently never occurred).  Compl. ¶ 49.  Finally, the Complaint alleges that Mr. Wu is a "private individual" who purported to act on behalf of the Chinese government, but who had no actual authority to do so.  Compl. ¶ 50.

## ARGUMENT

"When presented with motions under both [Rule] 12(b)(1) to dismiss for lack of subject matter jurisdiction and Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted," the Court must first consider the Rule 12(b)(1) motion and determine whether it "has the subject matter jurisdiction necessary to consider the merits of the action."  *Graham v. Select Portfolio Serv., Inc.*, 156 F. Supp. 3d 491, 499 (S.D.N.Y. 2016). Here, Plaintiffs bear the burden of demonstrating jurisdiction by a preponderance of the evidence.  *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003).

Upon a challenge under Rule 12(b)(1), the Court does *not* draw reasonable inferences from the pleadings in favor of Plaintiffs.  *Id.* at 623.  Instead, "the [C]ourt has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as

affidavits." *Id.* at 627; *accord Graham*, 156 F. Supp. 3d at 499. "If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000).

In contrast, "[t]o survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Morrison v. Eminence Capital, LLC*, 238 F. Supp. 3d 542, 545 (S.D.N.Y. 2017) (Abrams, J.) (internal quotation marks omitted). The Court may disregard "labels and conclusions," "formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement." *Chen v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 294-95 (S.D.N.Y. 2013) (Abrams, J.) (internal alterations and quotation marks omitted). If the complaint fails to sufficiently allege facts stating a claim, the claim should be dismissed. *See id.* at 294-301.

As set forth below, this Court should dismiss all of Plaintiffs' claims for four separate and independent reasons.

## I.   DIVERSITY JURISDICTION DOES NOT EXIST HERE.

Where, as here, plaintiffs invoke diversity jurisdiction on the basis of their foreign citizenship, those plaintiffs must demonstrate that the named defendant is a "'citizen[] of a State'" for diversity jurisdiction purposes. *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990) (quoting 28 U.S.C. § 1332(a) (1988)); *accord Integrated Tech. & Dev., Inc. v. Rosenfield*, 103 F. Supp. 2d 574, 577 (E.D.N.Y. 2000). This requires a showing that, at the time the complaint was filed, the defendant was a United States citizen and *domiciled* within the United States. *Id.*; *Lemos v. Pateras*, 5 F. Supp. 2d 164, 165 (S.D.N.Y. 1998); *Spiteri v. Russo*, No. 12-cv-2780, 2013 U.S. Dist. LEXIS 128379, at *232 (E.D.N.Y. Sept. 7, 2013); *Fuerst v. Fuerst*, 832 F. Supp. 2d 210, 217-18 (E.D.N.Y. 2011). If the defendant was a United States

citizen domiciled outside of the United States when the complaint was filed, he, she, or it is *not* a "citizen of a State" for diversity jurisdiction purposes and the defendant cannot be sued in federal court by foreign citizens invoking diversity jurisdiction. *See Cresswell*, 922 F.2d at 68-69; *Lemos*, 5 F. Supp. 2d at 165; *Spiteri*, 2013 U.S. Dist. LEXIS 128379, at *232; *Fuerst v. Fuerst*, 832 F. Supp. 2d at 217-18.

      As defined by the Second Circuit, "domicile" is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks and citation omitted). "Domicile is established initially at birth and is presumed to continue in the same place, absent sufficient evidence of a change." *Id.* Where plaintiffs allege that the defendant has changed his domicile from his place of birth, the plaintiffs shoulder the burden of proving, *by clear and convincing evidence*, both that the defendant (a) took up a new residence in a new country and (b) *has the intention to remain there indefinitely. Id.* Purchasing new residences for convenience or for work "do not, without more, indicate a change in domicile." *See, e.g.*, *Broadstone Realty Corp. v. Evans*, 213 F. Supp. 261, 265 (S.D.N.Y. 1962). Instead, courts determining whether there has been a change to defendant's domicile consider a number of factors, including: (a) the primary place of residence, (b) where the defendant's spouse and family reside, (c) where defendant works and transacts business, (d) whether defendant owns or rents his home in his asserted domicile, (e) where he maintains religious and social affiliations, (f) where defendant pays personal taxes, and (g) where defendant votes. *See, e.g.*, *Brignoli v. Balch, Hardy & Scheinman, Inc.*, 696 F. Supp. 37, 41 (S.D.N.Y. 1988); *Broadstone Realty Corp.*, 213 F. Supp. at 265.

Here, the Complaint alleges that Guo is a Hong Kong citizen residing in the State of New York and Company Plaintiffs are Chinese citizens with their principal places of business in China. Compl. ¶¶ 1-3. Plaintiffs also claim, "[o]n information and belief," that Mr. Wu is a United States citizen and maintains his residence in New City, New York. *See* Complaint ¶¶ 1-4, 6. The Complaint further alleges that Mr. Wu is both presently (a) serving as the "co-Chairman and CEO of Sun Seven Stars Entertainment & Media Group Limited," one of the largest private media companies *in China*, and (b) lives in "the United States to advance his own personal financial interests." *See id.* ¶ 35. Tellingly, however, Plaintiffs do not allege that Mr. Wu is, in fact, *domiciled* anywhere in the United States.

Even if this Court were to accept Plaintiffs' claims as true, they fail to demonstrate that Mr. Wu is *domiciled* in the United States so as to support the application of subject matter jurisdiction. *See, e.g.*, *Bowen v. Yellow Freight Sys.*, No. 95-9235, 1996 U.S. App. LEXIS 11858, at *2-4 (2d Cir. May 23, 1996) (holding that listing mailing addresses in a complaint without "indicat[ing] whether the addresses were also the domicile of either or both of the parties" was insufficient to establish jurisdiction); *Mackason v. Diamond Fin. LLC*, 347 F. Supp. 2d 53, 55 (S.D.N.Y. 2004) (dismissing the complaint for lack of jurisdiction where plaintiffs failed to plead the parties' *domiciles* and, instead, only plead their *residences*). Dismissal is therefor warranted.

Moreover, Mr. Wu's affidavit conclusively rebuts the inference of a New York domicile that Plaintiffs hoped to achieve here. *See* Wu Decl. ¶ 3-22. Specifically, Mr. Wu's declaration demonstrates that: (a) he was born in Shanghai, China (*id.* ¶ 3); (b) he has resided in China from birth until he was a young adult, and has left only on temporary bases to attend school, for work purposes, or while vacationing (*id.* ¶ 3); (c) he has lived permanently in China since at least 1996

with his wife (*id.* ¶ 5); (d) he has permanently resided with his wife in their present home in Beijing, China since his wife purchased this home in 2012 (*id.* ¶ 8); (e) he has and is presently serving as the Co-Chairman and Chief Executive Officer of Seven Stars, one of the largest private media and investment companies in China, and has physically worked in Seven Stars' Beijing, China offices continuously since 2000 (*id.* ¶¶ 14-15); (f) he only occasionally uses the two properties in New York that his wife owns when visiting for business or vacation purposes (*id.* ¶¶ 18-19); and (g) he has declared his intent to continue residing in Beijing, China (*id.* ¶¶ 10, 22). Thus, Mr. Wu has been domiciled in China since birth and therefore is *not* a "citizen of a State" for diversity jurisdiction purposes.

For this reason, this Court should dismiss the Complaint. *See, e.g.*, *Fuerst*, 832 F. Supp. 2d at 217 (dismissing the action because "a United States citizen . . . domiciled abroad . . . is considered neither a citizen of a state within the United States, nor a citizen or subject of a foreign state); *Spiteri v. Russo*, 2013 U.S. Dist. LEXIS 128379, at *232-34 (dismissing the action where a United States citizen "assert[ed] that he has his 'permanent domicile and residence in the Republic of Malta'"); *Amity v. Woodbridge Assocs., L.P.*, No. 12-cv-652, 2013 U.S. Dist. LEXIS 164985, at *5-6 (D. Conn. Nov. 20, 2013) (finding that a United States citizen who resided in Canada for more than nine months of each year and resided in Florida every winter was domiciled in Canada and, accordingly, dismissing the action for lack of diversity jurisdiction); *Broadstone Realty Corp.*, 213 F. Supp. at 265 (observing that a married man's domicile is presumed to be where his wife resides). This Court should likewise dismiss Plaintiffs' claims for lack of subject matter jurisdiction.

## II.   PLAINTIFFS' CLAIMS ARE BARRED BY THE ACT OF STATE DOCTRINE.

Even if jurisdiction did exist here, Plaintiffs' claims should be dismissed because they are not justiciable.  *Hunt v. Mobil Oil Corp.*, 550 F.2d 68, 74 (2d Cir. 1977).  The act of state doctrine "precludes any review whatever of the acts of the government of one sovereign State done within its own territory by the courts of another sovereign State." *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 809 F.3d 737, 743 (2d Cir. 2016).  Specifically, the Supreme Court and the Second Circuit have both held that the act of state doctrine precludes United States courts from examining "'the validity of a *taking of property* within its own territory by a foreign sovereign government.'" *Konowaloff v. Metro. Museum of Art*, 702 F.3d 140, 145 (2d Cir. 2012) (emphasis added) (discussing and quoting *Banco Nacional De Cuba v. Sabbatino*, 376 U.S. 398, 428 (1964), *superseded by statute on other grounds*, 22 U.S.C. § 2370(e)).

Here, Plaintiffs ask this Court to do that which it is expressly precluded from doing under the act of state doctrine: to declare invalid the Chinese government's alleged confiscation of Chinese companies' property, located in China, and award Plaintiffs damages based on the value of that confiscated property.  *See* Compl. ¶¶ 2-3, 33-34, 41-42, 45-50, 56-61, 66, 73, 79, 81, 86. In particular, Plaintiffs claim that "*Chinese authorities* acting at the direction of Defendant Wu's co-conspirators" within the Chinese government seized real property and other assets located *in China* from Company Plaintiffs—Chinese companies who both maintain their principal offices in Beijing, China. Complaint ¶¶ 2-3, 45-50, 56-60 (emphasis added). Plaintiffs then ask for $11.7 billion in damages on each of their five claims based on the alleged value of the assets that *the Chinese government seized in China from Chinese companies* and the resulting loss of profits and business opportunities. Compl. ¶¶ 59-61, 66, 73, 79, 81, 86.  The Second Circuit and other courts in this circuit have repeatedly dismissed claims of this character as non-justiciable.

For example, in *Hunt*, plaintiffs were small private oil companies with properties in Libya who alleged that a group of large private oil companies "conspired" to damage plaintiffs in violation of the Sherman Act by catalyzing the Libyan government's eventual cutting of plaintiffs' oil production and nationalization of the plaintiffs' properties in Libya. 550 F.2d at 69-72, 76. Like Plaintiffs here, the plaintiffs in *Hunt* did not name Libya or particular officials as defendants and, instead, (a) alleged that Libya was the "real victim" of the "conspiracy" by the private companies; and (b) purported to *only* challenge the acts of the named *private defendants* "in catalyzing" the foreign officials' acts, *not* the acts of the foreign government itself. *See id.* at 75-79. The Second Circuit rejected the plaintiffs' arguments and affirmed dismissal of their claims under the act of state doctrine because the plaintiffs' claims would require the district court to inquire into the validity of the Libyan government's actions. *See id.*

Similarly, in *Konowaloff*, the plaintiff brought claims against a museum to recover the value of a painting that the museum had purchased from the Russian government, asserting that the Russian government confiscated the painting from the plaintiff's predecessor in interest without compensation. 702 F.3d at 141-43, 145. The District Court dismissed the complaint on the museum's motion to dismiss and the Second Circuit affirmed the dismissal under the act of state doctrine. *Id.* at 145-48. In doing so, the Second Circuit: (a) rejected the plaintiff's improper invitation to inquire into the validity of the Russian government's confiscation and whether it violated Russia's own laws because that was precisely the inquiry that the act of state doctrine prohibited; and (b) held that Russia's confiscation of the painting was valid as a matter of law. *See id.* at 145-48; *see also Bokkelen v. Grumman Aerospace Corp.*, 432 F. Supp. 329, at 332-34 (E.D.N.Y. 1977).

The same result follows here; Plaintiffs' claims should be dismissed.

### III.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

In New York,[3] "conspiracy is not an independent tort, but a theory under which a party can establish the vicarious liability of co-conspirators for each other's offenses." *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 610 (S.D.N.Y. 2011) (collecting cases). Where, as here, the plaintiffs seek to hold one alleged co-conspirator vicariously liable for the torts purportedly committed by other co-conspirators, the plaintiffs must allege the elements of both (a) a civil conspiracy and (b) the underlying torts. *See id.* As set forth below, Plaintiffs do not and cannot do either. Accordingly, the Court should dismiss Plaintiffs' claims.

#### A.    Plaintiffs Do Not and Cannot Plead a Conspiracy Between Mr. Wu and the Unidentified Chinese Officials They Name

The crux of Plaintiffs' claims is that Plaintiffs were harmed when "Chinese authorities" seized Company Plaintiffs' assets. *See* Compl. ¶¶ 56-61, 64, 66, 73, 79, 81, 86.  That said, Plaintiffs do *not* allege that Mr. Wu himself seized Company Plaintiffs' assets.  *See* Compl. at ¶¶ 50, 56-58.  Instead, Plaintiffs explicitly allege that Mr. Wu was a "private individual," without authority to act for the Chinese government, who acted as a "co-conspirator."  Compl. at ¶¶ 50, 56-58. For any claim to lay as against Mr. Wu, then, Plaintiffs must allege, in addition to the underlying tort claims, a civil conspiracy between Mr. Wu and the Chinese officials who purportedly undertook the property seizures about which Plaintiffs complain.  *See Lewis v. Rosenfeld*, 138 F. Supp. 2d 466, 479 (S.D.N.Y. 2001).  Plaintiffs do not and cannot do so.

Here, the Complaint proffers nothing beyond formulaic and conclusory recitations of the elements of conspiracy. Indeed, entirely absent from the pleadings is a nexus between the alleged

---

[3]       It would appear that Plaintiffs suggest Mr. Wu's conduct occurred in New York, as this is where Guo resides, and that the law of New York would apply to Mr. Wu's conduct.  *See, e.g.*, *Hidden Brook Air, Inc. v. Thabet Aviation Int'l, Inc.*, 241 F. Supp. 246, 277-78 (S.D.N.Y. 2002) (applying the law of the jurisdiction where the "the last event that would render a putative tortfeasor liable" occurred).

harm (i.e., the seizure of certain assets) and Mr. Wu. Instead, Mr. Wu is said only to have

"conspired" with two "corrupt individuals within the government" identified only as "OFFICIAL

A" and "OFFICIAL B" "to silence anyone with information that might expose their corrupt

behavior."  Compl. ¶¶ 33-34, 50.  Separately, Guo alleges: (i) he was told by someone that Mr.

Wu could help him (Compl. ¶ 36); (ii) Mr. Wu sent Guo an article (Compl. ¶ 40); (iii) Mr. Wu

allegedly offered to help Guo have adverse articles removed by Boxun for a payment (Compl.

¶ 40); and (iv) Guo refused this offer (Compl. ¶ 40).  Guo further claims Mr. Wu "demanded that

[Guo] provide assistance to [Mr. Wu]," which included "locating an individual in the United

States," Compl. ¶¶ 41-42, and that Mr. Wu suggested that the safety of Guo's family would be in

peril if Guo did not cooperate.  Compl. ¶ 46.  Guo then alleges that family members and

colleagues were eventually arrested, presumably by Chinese authorities.  Compl. ¶ 47.  Mr. Wu

is further said to have threatened Guo and his son with arrests (that apparently never occurred).

Compl. ¶ 49.  Finally, Guo alleges that Mr. Wu is a "private individual" who purported to act on

behalf of the Chinese government, but who had no authority to do so.  Compl. ¶ 50. Plaintiffs'

conspiracy claims are deficient for two reasons.

      First, Plaintiffs' conclusory allegation that Mr. Wu and his unidentified "co-conspirators"

had an agreement to "intimidate, silence and discredit Plaintiff Guo and others who attempted to

disclose the corrupt activities of the conspirators," does not relate at all to the purported seizures

at issue.  *See* Complaint ¶¶  33-34, 50.  Plaintiffs do not allege any non-conclusory facts evincing

(a) a relationship between Mr. Wu and "OFFICIAL A" or "OFFICIAL B", (b) a "corrupt

agreement" between those parties, or (c) that Mr. Wu *even knew* "OFFICIAL A" or "OFFICIAL

B".  *See generally* Compl. Notably, the only non-conclusory allegation *potentially* connecting

Mr. Wu and a co-conspirator is Plaintiffs' allegation that "Plaintiff Guo was introduced to

Defendant Wu . . . by *an associate of* OFFICIAL A."  Complaint ¶ 36 (emphasis added).  Courts have repeatedly rejected analogous spare allegations that the defendant had a relationship with his purported "co-conspirators" and that they had a "corrupt agreement" together.  *See, e.g.*, *Toomer v. Cellco P'ship*, No. 11-cv-7515, 2012 U.S. Dist. LEXIS 101265, at \*25-27 (S.D.N.Y. July 20, 2012) (holding that a "spare communication" between co-conspirators did "not give rise to an inference of any agreement of any kind, let alone one to act unlawfully").  Accordingly, the Court should dismiss Plaintiffs' claims for this reason alone.

Second, Plaintiffs fail to even name Mr. Wu's alleged conspirators as they *must*.  *See, e.g.*, *A&P v. Town of E. Hampton*, 997 F. Supp. 340, 352 (E.D.N.Y. 1998) (dismissing the plaintiff's conspiracy-based claim where plaintiff "fail[ed] to identify the alleged co-conspirators except as the 'owners and operators of existing retail stores'").  For this reason, too, all "conspiracy" based claims against Mr. Wu should be dismissed.

### B.   Plaintiffs Do Not and Cannot Sufficiently Plead the Elements of Their Underlying Tort Claims

#### 1.   Company Plaintiffs' Do Not and Cannot Sufficiently Allege the Elements of Their Direct Claim for Tortious Interference with Business Relations

"To state a [direct] claim for tortious interference with business relations, a plaintiff must allege that:  '(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship.'"  *Plasticware v. Flint Hills Res.*, 852 F. Supp. 2d 398, 402 (S.D.N.Y. 2012) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)).  Plaintiffs' direct tortious interference with business relations claim should be dismissed for two separate and independent reasons.

13

Here, Company Plaintiffs fail to identify any *specific* business relationships with which Mr. Wu allegedly interfered.  It is insufficient to allege generally that "numerous third parties, including vendors, customers, lenders and other partners" have been purportedly harmed by Mr. Wu's "co-conspirators." Compl. ¶¶ 63-64.  Accordingly, Company Plaintiffs' direct claim for tortious interference with business relations should be dismissed for this reason.  *See Plasticware*, 852 F. Supp. 2d at 402-03 (dismissing tortious interference claim where the complaint only alleged generally that plaintiff's business relationships with "existing customers" and "major companies" were harmed).

Similarly, Company Plaintiffs do not cite any particular instrument or act of interference undertaken by Mr. Wu and directed at these purported business relationships.  *See generally* Compl.  That is, Plaintiffs must allege "conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship."  *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (2004).  Where the plaintiff "only alleges conducted direct at itself," the plaintiff's tortious interference with business relations claim must be dismissed.  *Plasticware*, 852 F. Supp. 2d at 403; *accord G.K.A. Beverage Corp. v. Honickman* 55 F.3d 762, 768 (2d Cir. 1995) (affirming the dismissal of a tortious interference with business relations claim where the plaintiffs failed to allege "any contact with the [plaintiffs'] customers or that [defendants] tried to convince the customers to make contracts with them rather than the [plaintiffs]").

Here, Company Plaintiffs do *not* allege any harm or conduct directed at a third-party with whom they have or seek to have a relationship. *See generally* Compl.  Rather, the Complaint claims that *only Company Plaintiffs were harmed* when their employees were arrested and their property was seized by the Chinese authorities.  Compl. ¶¶ 47, 56-59, 64.  Dismissal of Count I is appropriate.

14

2.      Aiding and Abetting Claims Against Mr. Wu Should be Dismissed

Company Plaintiffs next assert that Mr. Wu (a) aided and abetted the Chinese

government in tortuously interfering with Company Plaintiffs' business relations in China

(Count I), (b) aided and abetted the Chinese government's conversion of Company Plaintiffs'

property in China (Count II), and (c) aided and abetted the Chinese government trespass on

Company Plaintiffs' property in China (Count III). In order state a claim against a defendant for

aiding and abetting a tort, the plaintiff must sufficiently allege (a) the elements of the underlying

tort, (b) that defendant had "actual knowledge" of the underlying tort, and (c) provided

"substantial assistance" to the tortfeasors. *See Kirschner v. Bennett*, 648 F. Supp. 2d 525, 533

(S.D.N.Y. 2009).  Plaintiffs fail to do this here.

First, Plaintiffs do not sufficiently allege the torts underlying their aiding and abetting

claims for the reasons set for in Parts III.B.1, III.B.3, and III.B.4.  *See, e.g.*, *Kirschner*, 648 F.

Supp. 2d at 533 (dismissing plaintiff's aiding and abetting claims where plaintiff failed to

sufficiently allege the underlying torts).

Second, all of Company Plaintiffs' aiding and abetting claims should be dismissed

because they cannot allege a single non-conclusory fact evincing that defendant had "actual

knowledge" that the Chinese officials were going to seize Company Plaintiffs' assets in order to

interfere with Plaintiffs' business relations.  *See generally* Compl.  That is, to survive a motion to

dismiss, a plaintiff "must allege facts giving rise to a strong inference of defendant's *actual*

*knowledge of the underlying harm*, or the conscious avoidance of the same."  *See Kirschner*, 648

F. Supp. 2d at 544 (emphasis added; internal quotation marks omitted).  Here, Company

Plaintiffs fail to do so, a fact not abated by Plaintiffs' repeated reference to Chinese officials as

Mr. Wu's "co-conspirators."  *See* Compl. ¶¶ 56-61, 64-65, 68-73, 75-79; *see also Grove Press,*

*Inc.*, 649 F.2d 121, 123 (2d Cir. 1981) (holding that formulaic or conclusory allegations are insufficient to survive a motion to dismiss).

In fact, there is only a single non-conclusory allegation in the complaint *potentially* connecting Mr. Wu and the alleged tortfeasors, "OFFICIAL A" and "OFFICIAL B."  In particular, Plaintiffs claim Guo was introduced to Mr. Wu in December 2014 "by *an associate* of OFFICIAL A."  *See* Compl. ¶ 36 (emphasis added). But this allegation is alone insufficient to evince that Mr. Wu *actually knew* that OFFICIAL A and OFFICIAL B would seize Company Plaintiffs' assets.[4]  *See Kirschner*, 648 F. Supp. 2d at 544 (dismissing a tortious interference aiding and abetting claim where plaintiff failed to sufficiently allege that defendant had actual knowledge of the conduct that harmed plaintiff's customers, "not actual knowledge of different wrongful conduct that might have harmed others").

Finally, Plaintiffs do not allege that Mr. Wu substantially assisted the Chinese officials in seizing Company Plaintiffs' property as they must for these claims to survive a motion to dismiss.  *See id.*  Instead, they allege that Mr. Wu was "a private individual" who "had no authority to" "act[] on behalf of the Chinese government." Compl. ¶ 50.  Accordingly, the Court should dismiss Company Plaintiffs' aiding and abetting claims (Counts I-III) for this reason alone.  *See, e.g.*, *Kirschner*, 648 F. Supp. 2d at 545 (dismissing aiding and abetting claim where the plaintiff failed to allege "conduct on the part of the [defendants] that in any way assisted in the alleged [harm] that underlies the tort claims asserted").

---

[4]     At best, Plaintiffs can argue that Mr. Wu became aware, like most of the public, of the Chinese government's arrests of Company Plaintiffs' employees and seizure of Company Plaintiffs' property *after they occurred*. *See* Compl. ¶ 48 (alleging that Mr. Wu spoke to Guo about sorting out the arrests *after* they occurred).

3.      Company Plaintiffs' Aiding and Abetting Conversion Claim Should
be Dismissed For the Separate and Independent Reason that they
Cannot Allege that the Chinese Government Converted their Property

To state a claim for conversion, a plaintiff must allege that "someone, intentionally and without authority, assumes or exercised control over *personal property* belonging to someone else, interfering with that person's right of possession." *Dickinson v. Igoni*, 76 A.D.3d 943, 945 (N.Y. App. Div. 2d Dep't 2010) (emphasis added).  Where, as here, the property involved is not properly considered *personal* property, the complaint should be dismissed.  *See, e.g.*, *id.* Notably, "an action sounding in conversion does not lie where the property involved is *real property.*" *Id.* (internal alteration omitted; emphasis added). Likewise, property such as (a) "allegedly converted money [that ] is incapable of being described or identified in the same manner as a specific chattel," *see 9310 Third Ave. Assocs. v. Schaffer Food Serv. Co.*, 210 A.D.2d 207, 208 (N.Y. App. Div. 2d Dep't 1994) (internal citation and quotation marks omitted), and (b) "stock interests," as opposed to "physical property or physical representations of intangible property," are also not the proper subject of a conversion claim.  *See Chung v. Sano*, No. 10-cv-2301, 2011 U.S. Dist. LEXIS 34989, at *25-26 (E.D.N.Y. Mar. 31, 2011).

Here, Company Plaintiffs' conversion claim only concerns (a) real estate, (b) unidentified "cash held by" Company Plaintiffs, and (c) unidentified "stock holdings."  *See* Compl. ¶ 60. Thus, the property involved here is not the proper subject of a conversion action; Company Plaintiffs' conversion action should be dismissed with prejudice.  *See Dickinson*, 76 A.D.3d at 945.

17

4.      Company Plaintiffs' Aiding and Abetting Trespass Claim
        Should Be Dismissed Because Plaintiffs Fail to Allege that
        the Chinese Authorities Were Not Authorized to Seize Their Assets

Regardless of whether Plaintiffs sufficiently alleged the aiding and abetting elements,

Company Plaintiffs' aiding and abetting trespass claim should be dismissed because Company

Plaintiffs cannot sufficiently allege the underlying trespass.  To state a trespass claim against

government officials, a plaintiff must allege that the government officials were not *authorized by*

*law* to do so even without the plaintiff's consent.  *See, e.g.*, *East Coast Novelty Co. v. City of*

*New York*, 809 F. Supp. 285, 302 (S.D.N.Y. 1992) (holding that police officers in the United

States who enter a premises pursuant to a facially valid search warrant "cannot be held liable for

trespass").

Here, Company Plaintiffs repeatedly assert in conclusory fashion that "OFFICIAL A"

and "OFFICIAL B" ordered Company Plaintiffs' assets seized "to further their personal

interests," but nowhere do Company Plaintiffs allege that the "Chinese authorities" acting at

OFFICIAL A's and OFFICIAL B's direction were acting unlawfully when they seized Company

Plaintiffs' assets or that they had actual knowledge of the "conspiracy."  *See* Compl. ¶¶ 56-59.

That is, while Company Plaintiffs do claim that these officials acted in their own self-interest

generally, *see* Compl. ¶¶ 34, 56, the seizures at issue are at no point said to be wrongful in and of

themselves.  *See* Compl. ¶¶ 56-60. Accordingly, Company Plaintiffs' have failed to sufficiently

allege a trespass claim, and no claim for aiding and abetting of the same.

5.      Guo Fails to Allege Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress ("IIED"), Plaintiff Guo

must allege that Mr. Wu "(1) engaged in extreme and outrageous conduct, (2) intended to

cause . . . severe emotional distress, (3) a causal connection between the conduct and the injury,

and (4) severe emotional distress."  *Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363,

376-77 (S.D.N.Y. 2012). IIED is a particularly "rigorous[] and difficult" claim to plead. *Id.* at 377. Guo fails to do it and his IIED claim (Count IV) should be dismissed.

First, Guo cannot allege as he is required to do that Mr. Wu's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" or that Mr. Wu intended to cause Guo severe emotional distress. *See id.* at 376-77. Indeed, aside from Guo's conclusory allegations that Mr. Wu "threatened" and "intimidated" Guo, *see* Compl. ¶¶ 33, 40, 46-48, 49,[5] 53, 55, 81, the complaint is left with only innocuous claims that Mr. Wu was a purported middleman between Chinese officials and Guo. *See* Compl. ¶¶ 40 (offering to assist in removal of news publications), 45 (noting that the Chinese officials will look for Guo if he did not voluntarily speak with them), 46 (noting Guo's family would be put in peril if Guo did not cooperate with government authorities), 48 (asking Plaintiff Guo to speak with Chinese authorities to "sort out" the criminal investigation), 49 (informing Plaintiff Guo that Chinese authorities might seek an Interpol "Red Notice" requesting Plaintiff Guo's arrest). This conduct is not even untenable, much less "utterly intolerable in a civilized community." *See, e.g.*, *Rother v. NYS Dep't of Corr. & Cmty. Supervision*, 970 F. Supp. 2d 78, 104-05 (N.D.N.Y. 2013) (collecting numerous cases); *Owen v. Leventritt*, 174 A.D.2d 471, 471-72 (N.Y. App. Div. 1st Dep't 1991) (holding that a public threat to kill the pregnant plaintiff was insufficient to give rise to an IIED claim and noting that "mere threats . . . no matter how upsetting, are insufficient to constitute the tort of intentional infliction of emotional distress").

---

[5]     Guo suggests that Mr. Wu's discussion of a "Red Notice" was a threat on his life. This is implausible and false. Mr. Wu and Guo discussed the likelihood that China would seek the issuance of an Interpol "Red Notice," which is a "request to locate and provisionally arrest an individual pending extradition." *See* Declaration of Lisa C. Solbakken in Support of Defendant's Motion to Dismiss at Exhibits A & B (reporting that Interpol did eventually issue a "Red Notice" for Guo at China's request). The Court is permitted to take judicial notice of these materials on this motion to dismiss. *See Doron Precision Sys. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) (holding that "a court may take judicial notice of information publicly announced on a . . . website") (internal quotation marks omitted).

Second, Guo cannot allege a non-conclusory causal connection between and among his conversations with Mr. Wu, the Chinese government's seizure of Company Plaintiffs' assets, and Guo's "emotional distress."  *Compare* Compl. ¶ 50 (alleging that Defendant was a "private individual" with "no authority to" represent the Chinese government), *with* Compl. ¶ 56 (alleging that "Chinese authorities" seized Company Plaintiffs' assets) *and* Compl. ¶¶ 82-83.

Third, Plaintiff Guo fails to allege any non-conclusory facts evincing that he suffered severe emotional distress.  *See* Compl. ¶¶ 82-83 (alleging only in conclusory fashion that Plaintiff Guo suffered "severe emotional distress").  *See Huff v. West Haven Bd. Of Educ.*, 10 F. Supp. 2d 117, 122-23 (D. Conn. 1998) (holding that "conclusory allegations are insufficient as a matter of law to support a cause of action for [IIED]").

6.     Company Plaintiffs Do Not and Cannot Sufficiently
Allege the Elements of a *Prima Facie* Tort Claim

To state a claim for *prima facie* tort, a plaintiff must sufficiently allege "(1) intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts that would otherwise be lawful."  *Magee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 587 (E.D.N.Y. 1997).  "Where the plaintiff merely pleads intentional and malicious action, but not that the defendant's '*sole* motivation' was 'disinterested malevolence,' the [claim] will be dismissed."  *Id.*  Where defendant has motives other than or *in addition to* disinterested malevolence, "'such as profit, self-interest, or business advantage,'" plaintiff's *prima facie* tort claim should be dismissed.  *Restis v. Am. Coalition Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 730 (S.D.N.Y. 2014) (quoting *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990)).

Here, Company Plaintiffs plead exactly that which requires dismissal of their *prima facie* tort claim: that Mr. Wu and his "co-conspirators" were motivated out of self-interest—that is, to

20

protect their "personal agendas" and "to further their personal interests." Compl. ¶¶ 33-35, 42, 56. Mr. Wu's alleged self-interested motives require dismissal of Company Plaintiffs' *prima facie* tort claim.  *See, e.g.*, *Roper v. Hynes*, No. 05-cv-7664, 2006 U.S. Dist. LEXIS 69128, at *45 (S.D.N.Y. Sept. 27, 2006) (dismissing *prima facie* tort claim where "Complaint on its face alleges motives other than *disinterested* malevolence") (emphasis added).

## IV.   THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS BECAUSE THEY ARE BARRED BY STATUTES OF LIMITATION.

Under New York law, Guo's IIED claim (Count IV) has a one-year statute of limitations. *See* N.Y. C.P.L.R. § 215(3); *Misek-Falkoff v. Int'l Bus. Machines Corp.*, 162 A.D.2d 211, 211 (N.Y. App. Div. 1st Dep't 1990).  Moreover, all of Company Plaintiffs' claims (Counts I-III and V) are subject to a three-year statute of limitation.  *See* N.Y. C.P.L.R. § 214(4) (tortious interference with business relations claims); *Herrington v. Verrilli*, 151 F. Supp. 2d 449, 460 (S.D.N.Y. 2001) (conversion claims); *New York Tel. Co. v. Mobil Oil Corp.*, 99 A.D.2d 185, 187-88 (N.Y. App. Div. 1st Dep't 1984) (trespass claims); *Kelber v. Forest Elec. Corp.*, 799 F. Supp. 326, 341 (S.D.N.Y. 1992) (*prima facie* tort claims).  All such claims should be dismissed because they are time barred.

Specifically, Plaintiffs allege that in December 2014, Mr. Wu acted as a middleman between Guo and "connections with Boxun" to seek that certain website articles were removed, *see* Compl. ¶ 40, and requested that Guo help Mr. Wu locate individuals.  *See* Compl. ¶ 42. Plaintiffs also allege that between January 8, 2015 and January 21, 2015, Mr. Wu spoke to Guo concerning the Chinese government's criminal investigation into Plaintiffs.  *See* Compl. ¶¶ 46, 48, 54. Finally, the Complaint alleges that on January 28, 2015, "Chinese authorities" allegedly acting at Mr. Wu's unidentified co-conspirators' direction "began seizing the [Company Plaintiffs'] assets."  *See* Compl. ¶ 56.  Plaintiffs' claims should be dismissed with prejudice

because they accrued no later than January 28, 2015 when the "Chinese authorities" began seizing Company Plaintiffs' assets. *See IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 140-141 (2009) (holding that a tort claim accrues when the plaintiffs "*first* suffered damages") (emphasis added).

## CONCLUSION

For the reasons set forth above, Mr. Wu respectfully requests that the Court grant his motion to dismiss.

Dated: March 8, 2018
        New York, New York

Respectfully submitted,

ARKIN SOLBAKKEN LLP

By: */s/ Lisa C. Solbakken*
     Lisa C. Solbakken, Esq.
     Robert C. Angelillo, Esq.
     Thomas G. O'Brien, Esq.
750 Lexington Avenue, 25th Fl.
New York, NY  10022
Tel:    (212) 333-0200
Fax:    (212) 333-2350
Email:  lsolbakken@arkin-law.com
        rangelillo@arkin-law.com
        tobrien@arkin-law.com

*Attorneys for Defendant*